IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:11-CR-4-D
No. 2:15-CV-45-D

| | | |
|---|---|---|
| DEMETRIUS SPENCE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On November 20, 2017, the court held an evidentiary hearing concerning Demetrius Spence's ("Spence") remaining claim in his 28 U.S.C. § 2255 motion [D.E. 116]. In that claim, Spence contends that his trial counsel, A. Patrick Roberts ("Roberts"), was constitutionally ineffective in advising Spence regarding a proposed plea agreement. Spence argues that, with proper advice, he would have accepted the plea agreement, pleaded guilty to one count, and received a sentence of no more than 240 months' imprisonment. Instead, Spence went to trial, was convicted on four counts, and is now serving a 324-month prison sentence. The court has evaluated the record, the evidence, and the credibility of the witnesses. As explained below, the court concludes that Roberts provided constitutionally effective advice to Spence concerning the plea agreement. Alternatively, the court concludes that Spence would not have accepted the plea agreement even if Roberts provided the advice that Spence now contends Roberts should have provided. Thus, Spence has not proven prejudice. Accordingly, the court denies Spence's section 2255 motion and denies a certificate of appealability.

I.

On February 9, 2011, a federal grand jury charged Spence with conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base (crack) (count one), distribution of a quantity of cocaine base (crack) (counts two and three), and distribution of five grams or more of cocaine base (crack) (count four). See [D.E. 1]. The conspiracy allegedly occurred from on or about January 2000 through on or about February 9, 2011. See id. The individual transactions allegedly occurred on or about March 16, 2009 (count two), March 19, 2009 (count three), and March 30, 2009 (count four). See id. When indicted, Spence had a 1999 conviction for possession with intent to sell or deliver cocaine. See id.

According to the government, Spence distributed large quantities of cocaine base (crack) in and around Elizabeth City, North Carolina from on or about January 2000 through on or about February 9, 2011. Spence's alleged co-conspirators included Daniel Bowser, Walter Allen Norman, Marcel Duram Bowe, Deroca Johnson, Willie Garcia Warren, and Brandon Clarence Skinner. See Presentence Investigation Report ("PSR") [D.E. 91] ¶¶ 10–12 (Gov't Ex. 9).

On February 20, 2011, Neil Morrison ("Morrison") entered a notice of appearance as appointed counsel for Spence [D.E. 11]. Morrison received the discovery in the case and reviewed it with Spence. Morrison also engaged in plea negotiations with Assistant United States Attorney Denise Walker ("AUSA Walker"). According to Spence, Morrison presented a proposed plea agreement in which Spence would plead guilty to the conspiracy count, face a potential sentence of 120 months' imprisonment to life imprisonment, and the government would dismiss counts two, three, and four. Spence told Morrison that he did not conspire with anyone, that he was innocent, and to reject the proposed plea agreement. Morrison complied with Spence's instructions.

On October 18, 2011, Morrison moved to withdraw as Spence's counsel and told the court that Spence had retained attorney A. Patrick Roberts to represent him [D.E. 34]. On that same date, Roberts filed his notice of appearance as Spence's retained counsel [D.E. 33]. On October 19, 2011, the court granted Morrison's motion to withdraw [D.E. 35].

Spence's arraignment (which already had been continued four times [D.E. 20, 23, 28, 30]) was scheduled for November 29, 2011. See [D.E. 36]. On November 21, 2011, Spence moved to continue the arraignment. See [D.E. 37]. On November 28, 2011, the court granted the motion and continued the arraignment until January 9, 2012. See [D.E. 38]. On December 27, 2011, Spence again moved to continue his arraignment [D.E. 40]. On December 28, 2011, the court granted Spence's motion and continued the arraignment until March 2012 [D.E. 41]. On February 22, 2012, Spence again moved to continue his arraignment [D.E. 43]. On that same date, the court continued Spence's arraignment until March 19, 2012 [D.E. 44].

After thoroughly investigating the facts and the law, Roberts met with Spence and told Spence that the government would be able to prove all four counts against Spence, that the drug weight would be substantial, and that Spence faced an advisory guideline range of 360 months to life imprisonment, if convicted at trial on count one. Roberts also discussed with Spence the benefits of pleading guilty to one of the non-conspiracy counts pursuant to a plea agreement, and attempting to cooperate in order to possibly receive a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). Spence told Roberts that he had not committed the charged crimes and did not have any knowledge of criminal activity that would help the government. Spence also told Roberts that he was innocent, could "beat the case" at trial, and needed a lawyer who would fight for him.

On March 19, 2012, the court held Spence's arraignment. See [D.E. 46]. During the arraignment, the court advised Spence about his rights under the Constitution and laws of the United

States, the charges, and the potential penalties. Arraignment Tr. [D.E. 161] 2–22. As for the potential penalties, the court told Spence that count one required a mandatory minimum sentence of 120 months' imprisonment and a maximum sentence of life imprisonment, that counts two and three each carried no mandatory minimum sentence and a statutory maximum sentence on each count of 240 months' imprisonment, and that count four required a mandatory minimum sentence of 60 months' imprisonment and a statutory maximum sentence of 480 months' imprisonment. See id. at 21–22. After confirming under oath that he understood his rights, the charges, and the potential penalties, Spence pleaded not guilty to counts one through four. See id. at 18–19, 23. The court set the trial for June 4, 2012. See id. at 23–24.

On May 30, 2012, Spence moved to continue the trial "until the middle of August at the earliest." [D.E. 57]. In support, Roberts noted that he received additional discovery between May 25, 2012, and May 29, 2012. Id. at 1. According to Roberts, the discovery included the identity of two key witnesses and their unredacted statements pertaining to Spence. Id. Roberts stated that he and Spence needed "additional time" to review this additional discovery, "inquire into details regarding these new witnesses, and prepare a defense for trial." Id. Roberts also cited the government's Rule 404(b) notice of May 29, 2012, as warranting a continuance. Id. Roberts also noted that he had to undergo a medical procedure on June 1, 2012, and that the procedure could interfere with his effectiveness if the trial began on June 4, 2012. Id. at 2. Finally, Roberts noted that he had preplanned vacations between July 13 and July 20, 2012 and between August 4 and August 12, 2012. Id. Thus, Robert asked the court to continue the trial "until the middle of August at the earliest." Id. The government did not oppose the motion to continue. Id.

On May 30, 2012, the court granted Spence's motion to continue and rescheduled the trial for Monday, August 13, 2012, at 10:00 a.m. in Raleigh [D.E. 60]. On June 7, 2012, Spence wrote

a pro se letter to the court complaining that government agents were seeking to intimidate his mother "and people who are my witnesses." See [D.E. 61].

During June and July 2012, Roberts continued to be concerned about Spence's decision to plead not guilty and go to trial. Roberts feared that the jury would convict Spence on all four counts, that the drug weight would be substantial, and that Spence could receive a sentence of between 360 months to life imprisonment on count one. Roberts met with Spence and discussed his concerns. Roberts suggested approaching AUSA Walker with a proposed plea agreement to count two. Roberts explained the proposal to Spence, the mandatory minimums and statutory maximums on each count in the indictment, the advisory guideline system, and the benefits of pleading guilty to count two with a proposed stipulated drug weight of at least 840 grams but less than 2.8 kilograms of cocaine base (crack). Roberts also explained to Spence that such a proposed plea agreement would cap Spence's sentencing exposure at 240 months' imprisonment. Roberts contrasted that sentencing exposure with the sentencing exposure on count one of up to life imprisonment upon conviction. Roberts also explained to Spence that if Spence cooperated pursuant to a plea agreement, the government might file a motion under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e), which would increase Spence's chances for an even lower sentence. Spence authorized Roberts to approach AUSA Walker to engage in such plea negotiations, but continued to maintain his innocence and continued to prepare for trial.

In accordance with Spence's direction, Roberts undertook plea negotiations with AUSA Walker while simultaneously preparing for trial. Roberts knew that he was scheduled to go on a cruise between August 4 and August 11, 2012, to celebrate his mother's 60th birthday. Thus, in early August 2012, Roberts prepared his trial notebook. On August 4, 2012, Roberts filed four pretrial motions. See [D.E. 63, 64, 65, 66]. Roberts also contacted AUSA Walker to discuss

5

whether the government was willing to negotiate a plea agreement to count two with a stipulated drug weight of at least 840 grams but less that 2.8 kilograms of cocaine base (crack) to be used in determining the base offense level under U.S.S.G. § 2D1.1. The proposed plea agreement would also recommend to the court that Spence receive full credit for acceptance of responsibility and include cooperation language. See Fed. R. Crim. P. 11(c)(1)(A), (B).

On August 8, 2012, Roberts (while on the cruise ship) held a conference call with AUSA Walker, Roberts's assistant, and Roberts's paralegal Steven Wright ("Wright") to discuss the plea agreement. At the time, Wright was a lawyer admitted to the Vermont bar and was awaiting his results from the July 2012 North Carolina bar exam. Wright assisted Roberts throughout the course of representing Spence and attended several meetings with Spence and Roberts. See [D.E. 135-1] 23 (Gov't Ex. 2); [D.E. 135-1] 3 (Gov't Ex. 13). During the conference call, AUSA Walker agreed to draft a plea agreement as Roberts outlined concerning count two. On that same date, AUSA Walker emailed the draft plea agreement to Roberts. See [D.E. 135-1] 15–20 (Gov't Ex. 4).

Roberts, who was on a cruise ship with spotty cell service, reviewed the draft plea agreement and concluded that it comported with what he had discussed with Spence before leaving on the cruise. Roberts then instructed Wright to meet with Spence and tell Spence that Roberts recommended signing the plea agreement. Roberts also told Wright to tell Spence if he did not sign the plea agreement when he met with Wright, then the plea agreement would be off the table, and the parties would proceed to trial.

On August 9, 2012, Wright met with Spence (who was in custody) and gave him the plea agreement and Roberts's recommendation to sign it. Wright told Spence that the plea agreement would be off the table if he did not sign the plea agreement at the meeting. Spence rejected the plea agreement "due to the 840 grams amount." See [D.E. 135-1] 4 (Gov't Ex. 13). Spence then told

6

Wright about the "ranges he would plead to." See id. After the meeting, Wright told Roberts that Spence rejected the plea agreement. See id. Wright arranged to speak with Spence on the morning of August 10, 2012, and told AUSA Walker that Spence would respond to the plea agreement by 10:00 a.m. on August 10, 2012. See [D.E. 135-1] 31–32 (Gov't Ex. 5). Spence told Wright that he would plead guilty to count two only if the plea agreement's stipulated quantity of crack was 112 grams to 196 grams. See id. On August 10, 2012, Wright conveyed Spence's counter-offer to AUSA Walker. See id. AUSA Walker immediately rejected the counter-offer. See id.

On the evening of Saturday, August 11, 2012, Roberts returned to Raleigh. The trial was scheduled to begin at 10:00 a.m. on Monday, August 13, 2012. On Sunday, August 12, 2012, Roberts continued to prepare for trial. Early in the morning on August 13, 2012, Roberts went to the holding cell in the courthouse in Raleigh and met with Spence. During the meeting, Roberts gave Spence clothes to wear during the trial. Roberts also spoke with Spence about the plea agreement that Spence had rejected. Roberts explained the plea agreement to Spence and the benefits of signing the plea agreement (including capping Spence's imprisonment exposure at 240 months). Roberts advised Spence to sign the plea agreement. Roberts also told Spence that if Spence signed the plea agreement, Roberts would ask AUSA Walker if the government would still agree to it. If so, the parties would then have to present the plea agreement to the court to see if the court would grant a motion for a change of plea hearing and accept the plea agreement. Spence responded that he was not guilty of the charged crimes, that the government witnesses were lying, and that he would not sign the plea agreement or authorize Roberts to reinitiate plea negotiations.

On August 13, 2012, the trial began. On August 15, 2012, the jury found Spence guilty of conspiracy to distribute and possess with intent to distribute 280 grams of cocaine base (crack) in violation of 21 U.S.C. § 846 (count one), distribution of a quantity of cocaine base (crack) in

7

violation of 21 U.S.C. § 841 (counts two and three), and distribution of five grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841 (count four). See [D.E. 79, 83].

On September 27, 2012, Spence wrote a letter to the court and asked the court to set aside the verdict and dismiss the case, or alternatively, to grant a new trial. See [D.E. 85] (Gov't Ex. 7). In the letter, Spence lamented Roberts's failure to present evidence during the trial concerning Spence's innocence. Id. at 2–3. Spence also attacked the conduct of AUSA Walker and the investigators. Id. at 3–9. Spence did not mention the proposed plea agreement and did not state that he wanted to plead guilty to anything. See id.

On January 8, 2013, Spence wrote a second letter to the court. See [D.E. 89] (Gov't Ex. 8). In the letter, Spence discussed two plea agreements that were offered to him (i.e., one when Morrison represented him and one when Roberts represented him). See id. at 1–2. Spence stated that Roberts presented the latter plea agreement to him four of five days before trial. See id. at 2. Spence stated:

> Neither one of those pleas was any good! [AUSA Walker] wanted me to plea to something I had no part of, and that was way out of the range that they said the informant possessed! (Which was 10.9 grams). [AUSA Walker] tried to make me into someone that I'm not! So there was no way I could have taken either one of those two pleas.

Id. Spence then discussed his letter of September 27, 2012, and his desire for a hearing on his motion for acquittal. See id. at 2–3.

On January 22, 2013, the court denied Spence's motion for judgment of acquittal and motion for new trial [D.E. 93]. On January 28, 2013, the court held Spence's sentencing hearing [D.E. 100]. At the hearing, the court held Spence accountable for 8,375.68 grams of cocaine base and 4,674 grams of cocaine. See Sentencing Tr. [D.E. 110] 6–25; PSR ¶ 48. The court overruled Spence's objection that he should receive an adjustment for acceptance of responsibility. Sentencing Tr. at 25. The court also found that Spence "falsely denied or frivolously contested relevant conduct that

8

[the court found] to be true." Id. The court calculated Spence's advisory guideline range to be 292 to 365 months' imprisonment based on a total offense level of 38 and a criminal history category of III. Id. at 26. After listening to the parties' arguments and Spence's allocution, the court sentenced Spence to 324 months' imprisonment on counts one and four and 240 months' imprisonment on counts two and three, with the terms to be served concurrently. Id. at 26–43.

Spence appealed [D.E. 97]. On April 16, 2014, the United States Court of Appeals for the Fourth Circuit affirmed Spence's conviction and sentence. See United States v. Spence, 566 F. App'x 240, 242–45 (4th Cir. 2014) (per curiam) (unpublished). On January 12, 2015, the Supreme Court of the United States denied certiorari. See Spence v. United States, 135 S. Ct. 943 (2015)

On December 28, 2015, Spence filed a timely motion under 28 U.S.C. § 2255 [D.E. 116], and a memorandum in support [D.E. 117]. Spence raised six claims, including that Roberts was constitutionally ineffective concerning the advice he gave concerning the plea agreement. See [D.E. 117] 54–56. On July 18, 2016, the government moved to dismiss Spence's motion [D.E. 124] and filed a memorandum in support [D.E. 125]. On January 26, 2017, the court granted the government's motion to dismiss all claims, except Spence's claim that Roberts provided ineffective assistance of counsel concerning the plea agreement [D.E. 129].

On March 6, 2017, the government moved for summary judgment on the remaining claim [D.E. 133] and filed a memorandum in support [D.E. 134]. On April 3, 2017, Spence responded in opposition [D.E. 137]. On May 12, 2017, the court denied the government's motion for summary judgment and set an evidentiary hearing on Spence's remaining claim [D.E. 139].

II.

The court has considered the entire record and the credibility of the witnesses. In assessing the credibility of witnesses, a trial court may consider "variations in demeanor and tone of voice."

Anderson v. Bessemer City, N.C., 470 U.S. 564, 575 (1985). A trial court also may consider whether documents and objective evidence comport with a witness's testimony. See id.; Jackson v. United States, No. 5:07-CR-110-FL-1, 2014 WL 7149635, at *4 (E.D.N.C. 2014) (unpublished). Additional considerations include the witness's motive to lie and the specificity of a witness's statement. See e.g., United States v. Wilson, 624 F.3d 640, 665 (4th Cir. 2010); Jackson, 2014 WL 7149635, at *4.

"The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, sentencing, and appeals. See, e.g., Missouri v. Frye, 566 U.S. 134, 140–47 (2012); Lafler v. Cooper, 566 U.S. 156, 162–65 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Spence must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–96 (1984).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

In 2012, the Supreme Court addressed the standard for showing ineffective assistance of counsel during plea bargaining. See Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012). In Lafler, the Court held that the Sixth Amendment right to counsel applies to plea bargaining and that prejudice occurs when, absent deficient advice, the defendant would have accepted a plea that would have resulted in a less severe conviction, sentence, or both. See Lafler, 566 U.S. at 162–64. In Frye, the Court held that the Sixth Amendment requires defense counsel to communicate any plea offer from the government to the defendant. See Frye, 566 U.S. at 145.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695. When analyzing a section 2255 claim for ineffectiveness assistance of counsel, a court may rely on its own familiarity with the case. See Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013). In a section 2255 proceeding, the petitioner must prove his claim by a preponderance of the evidence. See e.g., Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam); Diaz v. United States, Nos. 7:09–CR–100–D, 7:11–CV–43–D, 2014 WL 7384974, at *3 (E.D.N.C. Dec. 29, 2014) (unpublished).

Spence contends that Roberts's performance was deficient because on August 9, 2012, he sent his paralegal Wright to meet with Spence and discuss the proposed plea agreement, but did not provide Wright with an email describing the advantages and disadvantages of accepting the plea agreement. See [D.E. 154] 4. Spence states that he did not accept the plea agreement on August 9, 2012, because he wanted to hear from Roberts about the plea agreement and would have accepted it had he heard from Roberts on that date. See id. Spence also contends that Roberts's performance was deficient on August 12, 2012, because Roberts did not meet with Spence to discuss the plea agreement, even though he had returned from the cruise on August 11, 2012. See id. at 5.

11

Moreover, according to Spence, on the morning of August 13, 2012, Spence asked Roberts about the plea agreement, and Roberts responded that the plea agreement was off the table. See id. at 5. Spence contends that if he had received proper advice from Roberts on August 12 or 13, 2012, he would have accepted the plea agreement, AUSA Walker would have agreed to it, the court would have approved it, and he would have had a conviction only on count two. Spence also contends that if these events had happened, then his advisory guideline range would have been 151 to 188 months' imprisonment, and his statutory maximum would have been 240 months' imprisonment. See id. at 5–6.

A.

First, the court addresses Roberts's performance under Strickland and its progeny. In doing so, the court notes that Roberts and Spence testified at the evidentiary hearing. Roberts was a credible witness. Spence was not.

"Although a defendant's proclamation of innocence does not relieve counsel of his normal responsibilities under Strickland, it may affect the advice counsel gives." Burt v. Titlow, 134 S. Ct. 10, 17 (2013). Between October 2011 and the August 2012 trial, Roberts and Spence had many discussions concerning the discovery, each offense charged, the penalties applicable to each charge, the advisory guideline system, and what to expect at trial. During these discussions, and after thoroughly investigating the evidence and the law, Roberts repeatedly advised Spence that the government had sufficient evidence to convict him at trial on all four counts. Roberts also repeatedly advised Spence to plead guilty pursuant to a plea agreement to limit his sentencing exposure. Spence rejected this advice, proclaimed his innocence, and discussed numerous alleged defenses that would allow him to "beat the case."

In early August 2012, Roberts asked Spence to allow him to seek to negotiate a plea agreement with AUSA Walker in which Spence would plead guilty to count two. Roberts explained to Spence the benefits and drawbacks of such a plea agreement, including the benefit of capping Spence's sentencing exposure to 240 months' imprisonment as opposed to a possible exposure to a life sentence if convicted at trial on count one. Roberts also explained the benefit of receiving acceptance of responsibility at sentencing, and the benefit of cooperating and possibly obtaining a motion from the government under U.S.S.G. § 5K1.1 or 18 U.S.C. § 3553(e). Spence maintained his innocence, but authorized Roberts to undertake such plea negotiations with AUSA Walker.

The court credits Roberts's testimony that, throughout the representation, he repeatedly advised Spence to plead guilty pursuant to a plea agreement in order to limit his sentencing exposure. Likewise, the court credits Roberts's testimony that Spence rejected Roberts's advice and wanted to proceed to trial because he believed he was innocent. The court does not credit Spence's testimony or other evidence to the contrary.

The court credits Roberts's testimony that, in early August 2012, Roberts informed Spence that he would attempt to negotiate a plea agreement to count two containing a drug stipulation of at least 840 grams but less than 2.8 kilograms of cocaine base (crack), cooperation language, and credit for acceptance of responsibility. The court also finds that, before Roberts left on his cruise, Roberts explained to Spence the benefits of such a plea agreement, including that such a plea agreement would cap Spence's sentencing exposure at 240 months' imprisonment. The court does not credit Spence's testimony or other evidence to the contrary.

The court credits Roberts's testimony that on August 8, 2012, Roberts received a proposed plea agreement from AUSA Walker in which Spence would plead guilty to count two. See [D.E. 135-1] 15–20 (Govt. Ex. 4). The proposed plea agreement included a recommended stipulation that

the relevant, readily provable, quantity of cocaine base (crack) was at least 840 grams but less than 2.8 kilograms of cocaine base (crack). See id. Additionally, the plea agreement included cooperation language and a recommended stipulation that Spence would get credit for acceptance of responsibility. See id.; cf. Fed. R. Crim. P. 11(c)(1)(A), (B).

On August 9, 2012, Wright, Roberts's paralegal, provided the plea agreement to Spence, and Wright told Spence that Roberts advised Spence to sign the plea agreement. Wright also advised Spence that the plea agreement would be off the table if Spence did not sign it during the meeting. Spence rejected the plea agreement and instructed Wright to counter-offer. See [D.E. 135-1] 31–32 (Gov't Ex. 5). The court does not credit Spence's testimony or evidence to the contrary concerning his discussions with Wright on August 9 and August 10, 2012. Moreover, the court finds that due to Roberts's explanation of the terms of the proposed plea agreement to Spence before leaving on the cruise, Roberts acted consistently with the Sixth Amendment in sending his paralegal Wright to present the plea agreement to Spence with the recommendation to sign it, and with the advice that the plea agreement would be off the table if Spence did not sign it at the meeting. See, e.g., United States v. Stevens, 813 F. Supp. 2d 758, 768–69 (W.D. Va. 2011).

Spence did not reject the plea agreement on August 9 or 10, 2012, because he wanted to hear from Roberts about the plea agreement or because of anything that Wright said to him. Rather, Spence rejected the plea agreement because he believed he was innocent and could "beat the case." Roberts's advice to Spence concerning the plea agreement up to and including August 9, 2012, fits comfortably within the wide range of professionally competent assistance, especially in light of Spence's repeated insistence "that he was innocent." Jones v. Murray, 947 F.2d 1106, 1109–11 (4th Cir. 1991); see Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's

14

actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant."); cf. Florida v. Nixon, 543 U.S. 175, 187 (2004) (explaining that the defendant has the "ultimate authority" to decide whether to plead guilty); Brookhart v. Janis, 384 U.S. 1, 7–8 (1966) (noting that a lawyer cannot "override his client's desire . . . to plead not guilty"); United States v. Stockton, 546 F. App'x 242, 243 (4th Cir. 2013) (per curiam) (unpublished).

Spence also contends that Roberts violated the Sixth Amendment by failing to discuss the plea agreement with Spence on August 12 or August 13, 2012, and failing to discuss with AUSA Walker the possibility of re-opening the plea offer. See [D.E. 154] 5–7. The court does not credit Spence's testimony or evidence to the contrary concerning his meeting with Roberts on August 13, 2012. Instead, the court credits Roberts's testimony that on the morning of August 13, 2012, Roberts discussed Spence's sentencing exposure if convicted at trial, reviewed the plea agreement with Spence, and advised Spence to sign the plea agreement, with the hope that AUSA Walker would be willing to sign it and that the court would permit a change of plea hearing. See [D.E. 135-1] 4. Spence, however, rejected Roberts's advice, proclaimed his innocence, and declined to sign the plea agreement or authorize Roberts to reinitiate plea negotiations.

Roberts's conduct and advice on August 12 or August 13, 2012, fits comfortably within the wide range of professionally competent assistance. See, e.g., Strickland, 466 U.S. at 689–91. Moreover, in light of the extensive prior discussions between Roberts and Spence concerning the sentencing process and Spence's sentencing exposure, the Sixth Amendment did not require Roberts, on the morning of August 13, 2012, to provide Spence a specific estimate of his advisory guideline range if he were convicted at trial on all counts and contrast that estimate with an estimate of Spence's advisory guideline range if he pleaded guilty to count two pursuant to a plea agreement.

See, e.g., id.; Thomas v. United States, 27 F.3d 321, 326 (8th Cir. 1994) (collecting cases); United States v. Gordon, 4 F.3d 1567, 1570–71 (10th Cir. 1993); see also United States v. Lambey, 974 F.2d 1389, 1394–96 (4th Cir. 1992) (en banc); United States v. Sweeney, 878 F.2d 68, 70–71 (2d Cir. 1989). After all, any such estimate would not be binding on the court. See Fed. R. Crim. P. 11(c)(1)(A), (B). Furthermore, at any Rule 11 proceeding, the court would expressly tell Spence that any estimate from his defense lawyer or anyone else on any sentencing topic would not be binding on the court and that the court would have the discretion to sentence Spence between the statutory minimum sentence and the statutory maximum sentence. On this record, Roberts did not provide constitutionally deficient performance.

B.

Alternatively, Spence has not proven prejudice under Strickland and its progeny. See Frye, 566 U.S. at 147 ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendant[] must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been offered effective assistance of counsel."); Lafler, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). Even if Roberts had met with Spence on August 9, 2012, discussed the plea agreement with him in detail, and provided a myriad of estimated advisory guideline ranges, Spence would not have signed the plea agreement. In making this finding, the court notes Spence's profound commitment to proceeding to trial and his profound belief that he was innocent. The court does not credit Spence's testimony at the evidentiary hearing and his attempt to rewrite history and proclaim that he would have signed the plea agreement on August 9, 2012, with the proper advice. See, e.g., Merzbacher v. Shearin, 706 F.3d 356, 366–68 (4th Cir. 2013). The same conclusion applies to Spence's

16

incredible contention that he would have signed the plea agreement on either August 12 or 13, 2012, if Roberts explained the plea agreement to him. The contention is false. See id. Indeed, Spence's two letters to the court after his trial corroborate that Spence would not have signed the plea agreement. See [D.E. 85, 89] (Gov't Exs. 7, 8). Tellingly, in Spence's letter of January 8, 2013, he explained why "there was no way [he] could have taken either one of those two pleas." [D.E. 89] 2 (Gov't Ex. 8). Thus, Spence has failed to prove prejudice. See Frye, 566 U.S. at 147; Lafler, 566 U.S. at 163–64; Merzbacher, 706 F.3d at 366.

After reviewing the claims presented in Spence's motion, the court finds that reasonable jurists would not find the court's treatment of Spence's claims debatable or wrong and that the claims do not deserve encouragement to proceed further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

III.

In sum, the court DENIES Spence's section 2255 motion [D.E. 116] and DENIES a certificate of appealability.

SO ORDERED. This 8 day of December 2017.

JAMES C. DEVER III
Chief United States District Judge