UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NOTHERN DIVISION
2:11-CR-0004-D-1

| UNITED STATES OF AMERICA | |
|---|---|
| v. | MEMORANDUM IN SUPPORT OF DEFENDANT'S PRO SE MOTION FOR COMPASSIONATE RELEASE |
| DEMETRIUS SPENCE | |
| Defendant. | |

Mr. Demetrius Spence, via undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to COVID-19 while detained with multiple extremely high-risk, chronic medical conditions. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Spence has properly exhausted his administrative remedies by filing his release request with the Warden on October 9, 2020. ***See Exhibit A: Compassionate Release/Reduction in Sentence***. On October 23, 2020, Warden David Ortiz denied Mr. Spence's compassionate release.

Mr. Spence is forty-two (42) years old and is borderline diabetic, is obese and has suffered from collapsed lungs stemming from being stabbed and shot in the chest.[1] Mr. Spence requires 800 grams of Ibuprofen for the extreme pain that he still suffers from his wounds. ***See Exhibit B; BOP Medical Records.***

---

[1] PSR, Page 9, Paragraphs 36 & 37

Upon information from Mr. Spence, the facility is failing to control the spread of the Coronavirus and the facility has had around a couple hundred active cases of this pandemic disease already. Mr. Spence is in custody at FCI Fort Dix, a low security correctional facility in New Jersey. Staff members and inmates have already been infected with COVID-19 at a rapid rate. (*See* https://www.bop.gov/coronavirus/ wherein the public is provided a "snap shot" of one time, which clearly is subject to deteriorating conditions and an increasing hazard of airborne disease from moment to moment.) FCI Fort Dix currently has 1,565 inmates who have tested positive for COVID-19. This pandemic is unnecessarily ravaging the individuals in the United States Bureau of Prisons (BOPs) and FCI Fort Dix is just one example of such.

On November 9, 2020, a handful of United States Senators sent out a letter to Mr. Michael Carvajal, Director of the Bureau of Prisons, with "grave concerns regarding the Bureau of Prison's inadequate protocols for COVID-19 testing and inmate transfers." It was reported that FCI Fort Dix, prior to October 2020, had not reported any "recent" positive cases within their facility but after inmate transfers took place from FCI Elkton, a second wave was now being faced. There were over 1,000 known positive cases from FCI Elkton and despite still knowing these numbers, it was decided upon that these inmates would be transferred to FCI Fort Dix. ***See Exhibit C: Letter to Director Michael Carvajal from The United States Congress.***

Most judges from the Eastern District of North Carolina, have granted Compassionate Release Requests. Compassionate Release is appropriate in a case like Mr. Spence as a form of legally sanctioned mercy due to the dire circumstances that he is currently facing. Thus, it is respectfully requested that this Honorable Court issue an order reducing Mr. Spence's sentence to time served and/or home confinement. For example, *see United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020).

**STATEMENT OF FACTS**

On February 9, 2011, Demetrius Spence was indicted in the Eastern District of North Carolina in a four count Indictment. Count 1 charged him with conspiracy to distribute and possess with the intent to distribute two-hundred eighty (280) grams or more of cocaine base (crack); Counts 2 and 3 charged him, in separate counts, with distribution of a quantity of cocaine base (crack); and Count 4 with distribute five (5) grams or more of cocaine base (crack). PSR at page 3 ¶ 1-3. On August 15, 2012, Mr. Spence was found guilty on all counts, and this Honorable Court sentenced him to 325 months. Mr. Spence has served 10 years of his 27-year sentence and his projected release date is February 15th, 2034.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. On October 9, 2020, Mr. Spence properly requested for Compassionate Release of the Warden of his facility, but unfortunately on October 23, 2020, likely not even enough time to review all of his medical records, he was denied, (which came as no surprise since that appears to be the common result in most cases by all BOPs). Thereafter, on December 4, 2020, Mr. Spence filed his Pro Se Motion for Compassionate Release. *See* D.E. 182. Thus, it is respectfully submitted that this Honorable Court find that he has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that he has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

# BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

Mr. Spence is unfortunately extremely vulnerable to hospitalization and serious illness that could have long lasting serious effect on his life due to his multiple high-risk conditions. *See* Current CDC Determinations of High Risk Conditions: https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html. Mr. Spence's request for compassionate release qualifies under the guidelines as extraordinary and compelling reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when

>The defendant is—
>
>(I)     suffering from a serious physical or medical condition;
>(II)    suffering from a serious functional or cognitive impairment; or
>(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Spence's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. ***See Exhibit D: BOP Program Statement 5050.49.*** During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the

Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

# ARGUMENT

Medical professionals within our country and around the world for that matter have deemed Mr. Spence's vulnerability to COVID-19 as being placed in the high-risk category of likely not being able to survive the Coronavirus due to his history of chronic medical problems. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. This constitutes "extraordinary and compelling reasons" for relief. Mr. Spence's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Spence posed by COVID-19 warrants relief.

### A. This Honorable Court has the authority to determine that Mr. Spence's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3.

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside the necessary love of your family, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Copeland*, No. 1:03-cr-01120-FB-1, 2020 WL 2537250 (E.D. N.Y. May 19, 2020) (Motion for compassionate release granted where defendant "has long battled chronic Hepatitis C…") (emphasis added);

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Echevarria*, No. 3:17-cr-44 (MPS), 2020 WL 2113604 (D Conn. May 4, 2020) (finding 49-year-old with pre-existing respiratory condition—a history of bronchial asthma—combined with the increased risk of COVID-19 in prisons had demonstrated extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

- *United States v. Miller*, No. 16-cr-20222-1, 2020 WL 1814084, at *4 (E.D. Mich. Apr. 9, 2020) ("Miller squarely fits the definition of an individual who has a higher risk of falling severely ill from COVID-19. . . . Therefore, the Court finds that extraordinary and compelling reasons exist for his immediate compassionate release.").

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This pandemic, as applied to Mr. Spence with his current chronic illness, especially when considering the problems he suffers with his lung and how the coronavirus attacks the respiratory system, along with also the lack of recommended treatment, is an extraordinary and compelling circumstance.

**B. Mr. Spence's Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.**

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with **certain underlying medical conditions** are at increased risk for severe illness from COVID-19." CDC, *What to know about liver disease and COVID.* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html. Those underlying conditions include Diabetes Type II; High Blood Pressure; Severe Asthma; High Cholesterol; Degenerative Disc Disease; Nerve Disorder in his hip; Ulcers; Gout; and Arthritis in his spine.

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate, as the below graph demonstrates. Quite candidly, that supports the conclusion that even if the BOP is doing all they can, it is simply insufficient in being able to control the coronavirus and protect lives in the process.



Amid this rapidly-unfolding crisis, the universally-recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[2] Mr. Spence is exactly the type of individual deserving of compassionate release: he is at risk of severe illness and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

---

[2] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf.* The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf.*

**C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Spence's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Spence's compromised physical health, and the unique danger of contracting COVID-19, when combined with the other Section 3553(a) sentencing factors, warrant immediate relief.

Mr. Spence has successfully completed many classes and obtained a series of Certificates at FCI Fort Dix since the beginning of his incarceration. Mr. Spence has had no incident reports or disciplinary actions against him. ***See Exhibit* E:** *Summary Reentry Plan – Progress Report.* He does not have a have a history of violent behavior, his crimes do not involve minors and is at risk due his obesity and being borderline diabetic. ***See Exhibit B.*** Release at this time would promote respect for the law because Mr. Spence has served a substantial amount of his sentence. On August 15, 2012, the court sentenced Mr. Spence to 324 months' imprisonment and five years' supervised release [D.E. 100]. Alternatively, continuing a culture of mass incarceration and blind enforcement without regard to humanity or case-by-case analysis would not promote respect for the law.

A reduction or modification of Mr. Spence's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Spence, whose ability to engage in basic self-protective measures is restricted and thus, warrant relief.

Moreover, Mr. Spence has an immediate release plan. He will be living with his long-standing fiancé who works as a traveling nurse and needs all of the support he can provide her with. *See Exhibit F: Statements from Mr. Spence's family confirming his release plan, rehabilitation, and good moral character.* Mr. Spence has employment ready for him once he is released as a truck driver as well. Mr. Spence wants to very eagerly go home and start to live a life free of his past life. He wants to go down the correct path that GOD will guide him through and wants to prove to his family and himself, that if given a second chance, will be a law-abiding citizen.

## CONCLUSION

Mr. Spence has demonstrated extraordinary and compelling reasons for compassionate release and respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 15th day of January 2021.

                                              GUIRGUIS LAW, PA

                                              /s/ Nardine Mary Guirguis
                                              Nardine Mary Guirguis
                                              PANEL Attorney
                                              434 Fayetteville St., Suite 2140
                                              Raleigh, North Carolina 27601
                                              Telephone: (919) 832-0500
                                              Facsimile: (919) 246-9500
                                              nardine@guirguislaw.com

                                              *Designation: CJA Appointed*

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

>Seth Morgan Wood
>Assistant United States Attorney
>Seth.wood@usdoj.gov
>150 New Bern Avenue, Suite 2100
>Raleigh, North Carolina 27601

This 15th day of January 2021.

>GUIRGUIS LAW, PA
>
>/s/ Nardine Mary Guirguis
>Nardine Mary Guirguis
>PANEL Attorney